UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH M. McADAM,

        Plaintiff,                        Case No. 1:11-cv-170

v.                                      HON. JANET T. NEFF

MATTHEW WARMUSKERKEN *et al.*,

        Defendants.
_____/

## OPINION

        Plaintiff Joseph M. McAdam filed this case against the City of Ludington[1] and Ludington police officer Matthew Warmuskerken, and Mason County and Mason County sheriff deputies Derek Wilson and Oscar Davila ("County Defendants"), alleging claims of excessive force under 42 U.S.C. § 1983 and assault and battery under state law, based on the officers' use of tasers in arresting Plaintiff and again at the hospital during his medical treatment, after a traffic stop of his mother's vehicle in which Plaintiff was a passenger. Pending before the Court are separate motions for summary judgment filed by the County Defendants (Dkt 111) and by Defendant Matthew Warmuskerken (Dkt 118). Plaintiff has filed a Response to each Motion (Dkts 117, 123) and Defendants have filed Replies (Dkts 124, 125). Having fully considered the parties' briefs and accompanying exhibits, the Court determines that Defendants' Motions are properly denied.[2]

---

      [1]The City of Ludington has since been dismissed.

      [2]Pursuant to W.D. Mich. LCivR 7.2(d), the motion for summary judgment is decided without oral argument.

I. Factual Background[3]

Plaintiff's allegations stem from a July 20, 2009 traffic stop of his mother's vehicle on Ludington Avenue in Ludington, Michigan, shortly after midnight, for inoperable tail lights, by Ludington Police Officer Matthew York.[4] Plaintiff was a passenger in the vehicle. After questioning Ms. McAdam about her consumption of alcohol that evening, York asked her to step out of the vehicle, and he escorted her to the rear of the vehicle, and proceeded to conduct field sobriety tests.

When Plaintiff got out of the vehicle to check on his mother, York told him she was okay and to return to the vehicle. Plaintiff got out a second time, and York again told him to stay in the vehicle, at which point Plaintiff informed York that he could leave and walk home, and York told him to just leave then.

Officer Warmuskerken arrived on the scene as backup, and had a similar exchange with Plaintiff. Plaintiff began recording his exchange with Warmuskerken on his iPhone. York then told Plaintiff he was interrupting his investigation and needed to leave. Plaintiff began walking away, followed by Warmuskerken. About that time, two Mason County sheriff deputies, Wilson and Davila, arrived at the scene. The exchange between Plaintiff and the three officers escalated, culminating in Officer Warmuskerken and Deputies Wilson and Davila taking Plaintiff down to the pavement and each using their tasers on him, several times, both to "drive stun" him and tase him

---

[3]The background facts are derived from the parties' statements of material facts, which are in large part disputed (*see* Statement of Material Facts (SMF) Dkt 117, Appendix; SMF, Dkt 125, Ex. 1). The facts are set forth for purposes of the decision on the motions for summary judgment and are not intended as determinative of any factual disputes in this case.

[4]York was not named as a defendant in this case.

with the probes. Plaintiff sustained cuts and scrapes during the take-down. Officer Warmuskerken also received some minor facial injuries.

Plaintiff was handcuffed and transported to Memorial Medical Center (the area emergency care facility) pursuant to law enforcement policy after use of a taser. One of Plaintiff's wrists was handcuffed to the hospital bed while he was being treated. Plaintiff was initially compliant but then realized he did not have his iPhone with the video he had taken during the traffic stop. He was advised by Warmuskerken that it had been seized as evidence, at which point Plaintiff refused further medical treatment and the officers' commands that he lie back on the bed. At that point, Deputy Wilson used his taser in an unsuccessful attempt to drive stun Plaintiff's right thigh and force him to lie down. Officer Warmuskerken then deployed his taser in the drive stun mode on Plaintiff's left thigh, and Plaintiff laid back down. After hospital staff finished treating and applying a bandage to Plaintiff's scraped knee, he was transported to the Mason County Jail.

Plaintiff was initially charged with Assaulting/Resisting/Obstructing Officer York in the performance of his duties. On October 7, 2009, Plaintiff pled guilty to assault and battery involving Officer Warmuskerken, MICH. COMP. LAWS § 750.81. Following his release and the return of his iPhone, Plaintiff discovered that the traffic stop video had been erased/deleted.

Plaintiff alleges three claims under § 1983 and assault and battery: Count I—Excessive Force against the individual Defendants (Warmuskerken, Wilson and Davila) related to Plaintiff's Ludington Avenue arrest; Count II—Excessive Force against the individual Defendants related to the force used at Memorial Medical Center; Count III—Assault and Battery against the individual Defendants; and Count V—§ 1983 municipal liability against Mason County (failure to train and supervise).

II. Summary Judgment Standard

A moving party is entitled to a grant of its motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Slusher v. Carson,* 540 F.3d 449, 453 (6th Cir. 2008); *Hamilton v. Starcom Mediavest Group, Inc.,* 522 F.3d 623, 627 (6th Cir. 2008). The initial burden is on the moving party to show that there is no dispute regarding any genuine issue of material fact. *Slusher,* 540 F.3d at 453. "Once the moving party supports its motion for summary judgment, the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." *Id.* The ultimate inquiry is "whether the state of the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

III. Analysis

The record before the Court precludes summary judgment for the three individual Defendants and for Mason County. The Sixth Circuit Court of Appeals has recently made clear that police officers' "using a taser repeatedly on a suspect actively resisting arrest and refusing to be handcuffed" does not amount to excessive force. *Hagans v. Franklin Cnty. Sheriff's Office,* ___ F.3d ___, 2012 WL 3608510, at *3 (6th Cir. Aug. 23, 2012). By contrast, excessive force has been found in cases in which tasers are used on "suspects [who] were compliant or had stopped resisting." *Id.* On the record before the Court, this case lies somewhere in between. The level of Plaintiff's resistance to the individual Defendants during his Ludington Avenue arrest is in serious dispute, and it cannot be said as a matter of law that the repeated use of tasers by all three individual Defendants

did not constitute excessive force. This is even more true on the limited but disputed factual record concerning the second incident of tasering Plaintiff by Wilson and Warmuskerken at the Memorial Medical Center. Likewise, the record does not conclusively establish that the individual Defendants are entitled to summary judgment of Plaintiff's state-law claim of assault and battery on grounds of immunity.

Although the claims against the County are less well-defined from a legal and factual standpoint, Plaintiff has presented sufficient evidence in opposition to the County's motion to survive summary judgment. In light of the record, or lack thereof as set forth by Plaintiff, he is entitled to proceed with his claim of § 1983 municipal liability against Mason County on the theory of failure to train and supervise.

A. Individual Defendants

Officer Warmuskerken and the County Defendants have separately moved for summary judgment; however, for purposes of analysis of the instant motions, the Court finds it unnecessary to distinguish the claims against the three individual Defendants (Warmuskerken, Wilson and Davila). The individual Defendants seek summary judgment on the grounds that Plaintiff cannot show Defendants used excessive force and they are entitled to qualified immunity. They also contend that Plaintiff's constitutional claims are barred under the holding in *Heck v. Humphrey,* 512 U.S. 477 (1994), because Plaintiff pled guilty to assault and battery. The Court disagrees.

1. *Heck* Bar

As an initial matter, the Court finds no bar to Plaintiff's suit under *Heck* on the present record. "*Heck* bars § 1983 plaintiffs from advancing claims that, if successful, 'would necessarily imply the invalidity' of a prior conviction or sentence. However, if 'the plaintiff's action, even if

5

successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.'" *Cummings v. City of Akron,* 418 F.3d 676, 682 (6th Cir. 2005) (quoting *Heck,* 512 U.S. at 487) (emphasis in original).

Defendants (the County Defendants in particular) take the position that based on the Sixth Circuit's analysis of Ohio law and on recently overturned Michigan case law, excessive force on the part of the police is an affirmative defense to assault and battery under MICH. COMP. LAWS § 750.81. They reason that because Plaintiff failed to raise the defense, his claims based on the use of force in effecting his arrest must be dismissed. Warmuskerken argues simply that because a conviction of resisting arrest necessarily includes a finding that the police officer did not use excessive force, *Heck* should be found to apply in this case.

Contrary to Defendants' arguments, there is no clear indication that Plaintiff's success on his excessive force claim would necessarily invalidate his conviction of assault and battery given recent case law, and particularly given the complicated and disputed facts of this case, involving the intertwined actions of three officers in two separate taser incidents. Whether Defendants used excessive force in the course of arresting Plaintiff and forcing his medical care are independent questions from whether Plaintiff at some point, in some way, committed an assault and battery involving Officer Warmuskerken. The Court is not persuaded that Plaintiff's claim is barred based on the arguments presented.

2. Excessive Force, 42 U.S.C. § 1983

To state a viable § 1983 claim, a plaintiff must allege (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the deprivation of that right was caused

by a person acting under color of state law. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). Claims that law enforcement officers have used excessive force in the course of an arrest are analyzed under the Fourth Amendment's reasonableness standard. *Jones v. City of Cincinnati,* 521 F.3d 555, 559 (6th Cir. 2008). "'[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Griffith v. Coburn,* 473 F.3d 650, 656 (6th Cir. 2007) (quoting *Graham v. Connor,* 490 U.S. 386, 397 (1989) (citation omitted)).

The affirmative defense of qualified immunity applies to excessive force claims under § 1983. "Police enjoy qualified immunity unless (1) the facts alleged show that the police violated a constitutional right; and (2) the right was clearly established." *Jones,* 521 F.3d at 559; *see also Stahl v. Czernik*, No. 11–2266, 2012 WL 3668013, at *2 (6th Cir. Aug. 27, 2012); *Hagans,* 2012 WL 3608510, at *2. Under this test, "qualified immunity is proper unless 'it would be clear to a reasonable officer' that his use of excessive force 'was unlawful in the situation he confronted.'" *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 902 (6th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

With regard to Plaintiff's excessive force claims, considering the evidence and all reasonable inferences in favor of Plaintiff, *Slusher,* 540 F.3d at 453, the Court concludes that genuine issues of material fact preclude summary judgment. The ultimate inquiry in an excessive force claim is whether the seizure was reasonable under the totality of the circumstances. *Id.* at 455. Relevant factors include, but are not limited to: the severity of the crime involved, whether the plaintiff posed an immediate threat to the safety of the officer or others, and whether the plaintiff was actively resisting arrest or attempting to evade arrest by fleeing. *Id.*

Case 1:11-cv-00170-JTN  ECF No. 128 filed 09/25/12  PageID.1723  Page 8 of 11

The general course of events in this case is fairly straightforward, but the critical analysis lies with the details of the police conduct in the face of Plaintiff's actions. Whether the use of force, in this case—the repeated tasering by the three individual officers—was objectively unreasonable, and hence a violation of Plaintiff's Fourth Amendment rights, hinges on disputed circumstances surrounding Plaintiff's arrest and his treatment at Memorial Medical Center. The parties directly dispute the import of testimony and other evidence bearing on whether Plaintiff actively resisted arrest at any point and whether Plaintiff was noncompliant or posed any danger to safety at the Medical Center while he was handcuffed to the hospital bed. *See Slusher,* 540 F.3d at 455.

Defendants contend that the facts establish that Plaintiff was engaged in active resistance when the officers were attempting to effectuate his arrest. Defendants likewise contend that Plaintiff became aggressive at the Medical Center and physically resisted Deputy Wilson's attempt to control him in that Plaintiff swatted or batted Deputy Wilson's arm away as he tried to drive stun Plaintiff. The evidence presented by Plaintiff directly contradicts Defendants' factual contentions.

Officer Warmuskerken further argues that Plaintiff's guilty plea definitively establishes that because Plaintiff assaulted and battered the officer, Warmuskerken's initial use of the taser is not contrary to clearly established law regarding the appropriate use of force. This argument ignores the details, timing, and sequence of the specific events, and does not conclusively establish a cause and effect relationship that Warmuskerken's argument requires.

The facts are not so one-sided that a reasonable jury could not return a verdict for Plaintiff. *See Slusher,* 540 F.3d at 453. In deciding a motion for summary judgment, the court must refrain from making credibility determinations or weighing the evidence. *Anderson,* 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences

from the facts are jury functions, not those of a judge . . ." in ruling on a motion for summary judgment. *Id.* Whether the force used to take Plaintiff into custody, and later to induce medical treatment, was objectively reasonable under the totality of the circumstances requires a resolution of the disputed facts. This resolution depends in large part on matters of credibility and the weight accorded the evidence. Summary judgment is therefore improper.

The Court concludes that the issue of qualified immunity cannot be determined as a matter of law. Genuine issues of material fact exist concerning whether the force used in this case was "objectively reasonable." Even allowing for the fact that police officers are required to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving, *Graham,* 490 U.S. at 397, the facts of this case involve too close a call to decide the ultimate question of qualified immunity as a matter of law. Defendants are not entitled to summary judgment of Plaintiff's § 1983 claims.

Likewise, given the clearly disputed material facts, the individual Defendants are not entitled to governmental immunity with respect to Plaintiff's state law claim of assault and battery.

B.  Municipal Liability

Plaintiff has asserted a claim against Mason County based on its failure to train or supervise its law enforcement officers with respect to the use of tasers such that the County was deliberately indifferent to Plaintiff's rights. Plaintiff's claim is in part premised on the Mason County Sheriff Department's lack of a policy requiring deputies to prepare separate use of force reports or separate taser use reports. Plaintiff contends that the Mason County Sheriff Department has a policy of report writing and record retention (or lack thereof), which precludes a review of historical use of force incidents involving the use of tasers, for supervision, discipline, and training purposes. Further,

because the tasers at issue and data have been destroyed, no investigation can be made concerning the frequency and specific instances of taser use by Mason County deputies.

A municipality is liable under § 1983 only when the violation of the plaintiff's federally protected right is attributable to the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy …." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Thus, the liability of a local government under § 1983 depends solely on whether the plaintiff's constitutional rights have been violated as a result of a "policy" or "custom" attributable to the government. *Holloway v. Brush,* 220 F.3d 767, 772 (6th Cir. 2000) (en banc). There must be a direct causal link between a policy, custom or deficient training of the local government and an alleged constitutional violation. *See, e.g., Montgomery v. County of Clinton, Mich.*, 743 F. Supp. 1253, 1257 (W.D. Mich.,1990) (Bell, J.) (citing *Canton v. Harris,* 489 U.S. 378, 388-389 (1989)). To satisfy *Monell,* a plaintiff must "identify the policy, connect the policy to the city itself, and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir. 1993); *Coogan v. City of Wixom,* 820 F.2d 170, 176 (6th Cir. 1987).

"The inadequacy of police training only serves as a basis for § 1983 liability 'where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact.'" *Slusher,* 540 F.3d at 457 (quoting *Harris*, 489 U.S. at 388 (emphasis added)). "To establish deliberate indifference, the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Slusher,* 540 F.3d at 457 (citations and quotations omitted).

Although Plaintiff's municipal liability claims against the County are a closer issue, the Court is persuaded that Plaintiff has presented sufficient evidence to survive summary judgment. The evidence before the Court raises questions of material fact concerning the County's policies or customs with respect to training and supervision, particularly given the County's lack of records on the historical use of tasers by deputies. Plaintiff points to the lack of specific incident reports and historical use data with respect to tasers as evidence of the County's inadequate policies, oversight supervision and training of taser use.

Further, it is undisputed that use data for the tasers at issue was destroyed along with the tasers after the incidents involving Plaintiff, when Officer Davila sent three tasers to Taser International, Inc., because they were not operating, and he did not know if they were the same tasers used in the incidents with Plaintiff (Davila Aff., Dkt 124, Ex. 28). Officer Davila admits that he was unaware of the policies of Taser International involving the destruction of tasers and did not know that he could have requested that Taser International download the data from the tasers prior to their destruction (*id.*). This evidence, coupled with the County's other lack of reporting and recordkeeping on the historical use of tasers by sheriff deputies, persuades the Court that the County is not entitled to judgment as a matter of law on the claim of municipal liability under § 1983.

## IV. Conclusion

For the reasons stated, genuine issues of material fact preclude summary judgment. Defendants' Motions for Summary Judgment are therefore properly denied.

An Order consistent with this Opinion will be entered.

DATED: September 25, 2012          /s/ Janet T. Neff
                                    JANET T. NEFF
                                    United States District Judge